UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZZET HERNANDEZ,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>FCA US LLC,<br><br>　　　　　Defendant. | Case No.: 1:21-cv-0745 JLT HBK<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND<br><br>(Doc. 6) |

    Elizzet Hernandez purchased a Jeep Cherokee that she asserts was defective and required multiple repairs. Hernandez contends FCA US LLC breached express and implied warranties given at the time of purchase and seeks to hold FCA liable under California's Song-Beverly Consumer Warranty Act. (*See* Doc. 1-2.)

    Hernandez asserts the Court lacks jurisdiction and seeks to remand the matter to the state court. (Doc. 6.) FCA opposes the motion, asserting the Court has diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 8.) The Court finds the matter suitable for decision without oral arguments, and no hearing date will be set pursuant to Local Rule 230(g) and General Order 618. For the reasons set forth below, the motion to remand is **GRANTED.**

**I.     Background and Procedural History**

    Hernandez purchased a new Jeep Cherokee in California, "for her personal and family use," on December 19, 2015. (Doc. 1-2 at 4, ¶ 6.) Hernandez reports "[t]he total amount paid or payable for the

1

1   Vehicle including license and registration was $36,519.92." (*Id.*)  According to Hernandez, "FCA
2   provided Plaintiff multiple written, express warranties including… a 3-year/36,000-mile basic warranty
3   and a 5-year/60,000-mile powertrain warranty." (*Id.*, ¶ 7.)  Hernandez also asserts "the sale of the
4   Vehicle was accompanied by FCA's implied warranty that the Vehicle is merchantable." (*Id.* at 7, ¶ 8.)

5          Hernandez asserts she "properly used, maintained and cared for the Vehicle, meeting all
6   obligations and conditions of the express warranty." (Doc. 1-2 at 4, ¶ 9.)  However, she alleges "[t]he
7   Vehicle contains multiple nonconformities or defects that substantially impair the use, value, or safety
8   of the vehicle, including, but not limited to: faulty shifter assembly, transmission issues, [and] electrical
9   issues…." (*Id.* at 5, ¶ 14 [emphasis omitted].)  Hernandez asserts she "delivered the Vehicle to FCA or
10  its authorized agents in this State on at least six… separate occasions for warranty related repair of all
11  the nonconformities." (*Id.*, ¶ 16.)  She contends, "FCA has been unable or unwilling to bring the
12  Vehicle into conformity with the express warranties it gave." (*Id.*, ¶ 17.)  In addition, Hernandez
13  alleges that due to the nonconformities, "the Vehicle was not of the same quality as those generally
14  accepted" and FCA beached its implied warranty of merchantability. (*Id.* at 7, ¶ 45.)

15         On March 26, 2021, Hernandez filed a complaint in Stanislaus County Superior Court, Case No.
16  CV-21-001621. (Doc. 1-2.)  Hernandez seeks to hold FCA liable for breach of express warranties and
17  breach of implied warranties under California's Song-Beverly Act. (*Id.* at 5-8.)  The prayer for relief
18  includes: (1) restitution "equal to the actual price paid or payable by Plaintiff, which exceeds
19  $36,519.92;" (2) restitution for collateral charges, including "tax, license fees, registration fees, and
20  other fees;" (3) incidental damages including "repair, towing, and rental car costs actually incurred;"
21  (4) costs and expenses; (5) "[a] civil penalty as called for Song Beverly, of no more than two times
22  actual damage;" (6) prejudgment interest; and (7) other relief the Court deems proper. (*Id.* at 8-9.)

23         On May 7, 2021, FCA filed a Notice of Removal, asserting this Court has diversity jurisdiction
24  pursuant to 28 U.S.C. § 1332. (Doc. 1.)  FCA observed that Hernandez seeks restitution for the
25  $36,519.92 paid as well as civil penalties. (*Id.* at 5, ¶¶ 17, 20.)  Based upon the prayer for relief, FCA
26  calculates the total "for actual damages and a civil penalty equals $109,559.76." (*Id.*, ¶ 20.)  In
27  addition, FCA notes the Court may consider estimated attorney fees in calculating the amount in
28  controversy and contends the fee awards under the Song-Beverly Act commonly exceed $35,000. (*Id.*,

2

¶ 18.) Thus, FCA contends "the amount in controversy exceeds $75,000.00 exclusive of interest and costs," as required by Section 1332. (*Id.* at 8.)

Hernandez filed the motion to remand now pending before the Court on June 2, 2021, arguing FCA erred in calculating the amount in controversy, and the Court lacks diversity jurisdiction. (Doc. 6.) FCA filed its opposition to the motion on June 9, 2021 (Doc. 8), to which Hernandez filed a reply on June 23, 2021 (Doc. 9.)

## II.     Jurisdiction

Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed … to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. This statute "is strictly construed against removal jurisdiction," and the party seeking removal "bears the burden of establishing federal jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) (citations omitted).

The district court has original diversity jurisdiction when all parties are diverse and the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a); *see also Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted). The presence of any single plaintiff from the same state as any single defendant destroys "complete diversity" and strips the federal courts of original jurisdiction over the matter. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005). In addition, the amount in controversy is calculated based upon "the complaint operative at the time of removal and encompasses all relief the court may grant on the complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005) ("the amount at stake in the underlying litigation … is the amount in controversy for purposes of diversity jurisdiction"). "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

When, as here, a plaintiff does not specify the amount in controversy in the complaint, the removing party bears the burden to establish the amount in controversy at removal. *Rodriguez v. AT &*

*T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013).  A notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  If the plaintiff does not contest the amount, the defendant's calculated amount should be accepted.  *Id*. at 88.  However, if a plaintiff challenges the calculation, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  *Id*.  This evidence may include affidavits, declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal."  *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co*., 116 F.3d 373, 377 (9th Cir. 1997)). The party seeking to invoke the jurisdiction of the court bears the burden of supporting its jurisdictional allegations with competent proof.  *See Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992).  "[A]ny doubt about the right of removal requires resolution in favor of remand."  *Moore-Thomas v. Alaska Airlines, Inc*., 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

**III.    Discussion and Analysis**

Hernandez asserts FCA failed to meet its burden of proof to establish diversity jurisdiction in this action.  (*See generally* Doc. 6-1.)  FCA opposes remand, asserting it carried the burden to establish diversity jurisdiction, including the amount in controversy requirement.  (*See* Doc. 18.)

    **A.    Diversity of Citizenship**

As an initial matter, Section 1332 first requires complete diversity of citizenship, and the presence "of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action."  *Abrego Abrego*, 443 F.3d at 679.  For purposes of diversity jurisdiction, a person is a citizen of the state in which she is domiciled and is presumptively domiciled at her place of residence.  *Kantor v. Wellesley Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983).  A limited liability company, such as FCA, is a citizen of all the states of which its owners or members are citizens.  *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

In its notice of removal, FCA details the citizenship of its owners and members, indicating that FCA US LLC is a Delaware limited liability Company with its principal place of business in Michigan.  (Doc. 1 at 7, ¶ 27; *see also* Doc. 8 at 10.)  Hernandez is a resident of California and does not dispute

that the citizenship of the parties is completely diverse. (*See generally* Doc. 6-1.) Accordingly, the Court finds this requirement of Section 1332 is satisfied.

### B. Amount in Controversy

According to Hernandez, "FCA's amount in controversy calculus is faulty on at least three grounds: the purchase price, the civil penalty and the attorney fees are far too speculative to meet Defendant's burden." (Doc. 6-1 at 5-6.) Hernandez asserts FCA failed to account for "the statutory offset for use of the vehicle" based upon mileage. (*Id.* at 6.) In addition, Hernandez argues the identified civil penalties and attorneys' fees were speculative and should not be included in the amount in controversy calculation. (*Id.* at 7-13.)

#### 1. Restitution and actual damages

Hernandez seeks damages under the Song-Beverly Act for violations of express and implied warranties. (Doc. 1-2 at 8.) However, the parties disagree as to the maximum restitution that Hernandez may recover and the total actual damages in dispute.

The Song-Beverly Act defines restitution as "the actual price paid by the buyer," including collateral charges such as tax and registration fees. Cal. Civ. Code § 1793.2(d)(2)(B). However, the calculation of restitution excludes "nonmanufacturer items installed by a dealer or the buyer," and is reduced by the amount "directly attributable to use by the buyer" prior to delivery of the vehicle to the dealer for correction of the problem that gave rise to the warranty nonconformity. *Id.* Thus, for purposes of calculating the amount in controversy, the purchase price should be reduced by a "usage offset."[1] *See Schneider v. Ford Motor Co.*, 756 F. App'x 699, 700-01 (9th Cir. 2018). Similarly, because a manufacturer's rebate reduces "the actual price paid," a rebate amount should be excluded from the calculation. *See, e.g., Degenhardt v. Ford Motor Co.*, 2022 WL 103723, at *5 (S.D. Cal. Jan. 10, 2022) (observing a manufacturer's rebate was "properly excluded from the restitution calculation" for purposes of determining the amount in controversy).

Following the filing of the motion to remand, FCA recalculated the actual damages to address

---

[1] The offset amount is determined by multiplying the "actual price of the new motor vehicle paid or payable by the buyer … by a fraction having its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer delivered the vehicle" for correction of the problem. Cal. Civ. Code § 1793.2(d)(2)(C).

5

the statutory set-off amount and deduct manufacturer's rebates. (Doc. 8 at 5-6.) FCA noted Hernandez did not identify the mileage deduction she believed was appropriate in the motion, but FCA anticipated she would "allege the first complaint occurred on February 10, 2018 at 36,343 miles." (*Id.* at 6, n.1.) Because the vehicle had 15 miles at delivery, FCA determined the statutory offset resulted in a deduction of $6,912.79. (*Id.* at 6.) In addition, FCA acknowledged $2,500 should be deducted for manufacturer's rebates. (*Id.*) With these deductions, FCA concluded Hernandez was "seeking $27,107.13 in actual damages." (*Id.*)

Hernandez agrees the price paid was subject to the mileage offset deduction of $6,812.79 and a reduction of $2,500.00 for the manufacturer's rebate. (*See* Doc. 9 at 3.) However, Hernandez "this is not the end of the inquiry, as deductions for non-manufacturer installed items include deductions for service contracts and gap contracts." (*Id.*, internal quotation marks omitted.) Hernandez notes that the purchase contract indicates the total price included "four service contracts and one gap contract that will reduce the price paid or payable . . ." (*Id.*, citing Agyeman Decl. ¶ 2, Ex. A [Doc. 9-2].)

As Hernandez argues, because the Song-Beverly Act excludes restitution for "non-manufacturer items installed by a dealer or buyer," service contracts and gap contracts "must be excluded from the purchase price of the vehicle for purposes of the restitution calculation." *See Carillo v. FCA USA, LLC*, 546 F.Supp.3d 995, 1002 (C.D. Cal. 2021) (citing Cal. Civ. Code § 1793.2(d)(2)(B)); *see also Velazquez v. Ford Motor Co.*, 2021 WL 2948649, at *2-3 (E.D. Cal. July 13, 2021) (agreeing a service contract and gap insurance were "nonmanufacturer items installed by a dealer or buyer," and deducting the amounts paid for the identified service and gap contracts for purposes of calculating the amount in controversy); *Rupay v. Vokswagen Group of Am.*, 2012 WL 10634428, at *5 (C.D. Cal. Nov. 15, 2012) ("neither GAP insurance nor a third party service contract are 'manufacturer-installed items,'" and they are in fact 'non-manufacturer items,' as they are not manufactured by anyone, as they are both service contracts"). The purchase contract indicates Hernandez paid for four optional service contracts in the amounts of $2,326.00 to Fidelity VSC, $553.00 to Fidelity Car Care, $432.00 to Fidelity Road Hazard, and $500.00 to Radiant Ride. (Doc. 9-2 at 2-3.) In addition, Hernandez paid $837.00 for an optional gap contract to JMA. (*Id.* at 2.) Thus, a total of $4,648.00 shall be deducted from the price for purposes of calculating the possible restitution and the amount in controversy. *See Carillo*, 546

F.Supp.3d at 1002; *Velazquez*, 2021 WL 2948649, at *2-3; *see also* Cal. Civ. Code § 1793.2(d)(2)(B). With these deductions, the total actual damages that may be paid to Hernandez as restitution under the Song-Beverly Act is $22,459.13.[2]

### 2. Civil penalties

The Song-Beverly Act provides that a buyer may recover "a civil penalty of up to two times the amount of damages" if the manufacturer or seller "willfully" violated a warranty or provision of the Act. Cal. Civ. Code § 1794(c); *see also Ramos v. FCA US LLC*, 385. F.Supp.3d 1056 (E.D. Cal. 2019) (explaining civil penalties may be imposed for the willful failure of "vehicle manufacturers to promptly replace or pay restitution for their lemon vehicles" as required by Section 1793.2(d)(2) of the Act). Generally, this civil penalty is properly included in determining the amount in controversy, as "the civil penalty under the Song-Beverly Act is akin to punitive damages, because both have the dual effect of punishment and deterrence for defendants." *Brady v. Mercedes-Benz USA*, *Inc.*, 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002); *see also Gonzales v. CarMax Auto Superstores, LLC,* 840 F.3d 644, 648 (9th Cir. 2016) (affirming the district court's calculation of amount in controversy, which included penalties under the Song-Beverly Act). Moreover, "[c]ourts as a matter of law, calculate the amount in controversy based upon the maximum amount of civil penalties available to [a] plaintiff." *Saulic v. Symantec Corp.*, 2007 WL 5074883, at *4 (C.D. Cal. Dec. 26, 2007).

In the complaint, Hernandez alleges "FCA has breached its affirmative duty to promptly replace a vehicle or make restitution by willfully failing and refusing to replace the Vehicle or make restitution to Plaintiff of the monies paid or payable towards the purchase of the Vehicle and any incidental and other damages, as required by Civil Code § 1793.2(d)(2)." (Doc. 1-2 at 5-6, ¶ 23.) In the prayer for relief, Hernandez requests "[a] civil penalty as called for under Song Beverly, of no more than two times actual damage, according to proof." (*Id.* at 9.) Thus, FCA asserts the "statutory civil penalties … are properly included in determining [the] amount in controversy." (Doc. 8 at 6, emphasis omitted.) On the other hand, Hernandez argues "the plain language of [her] complaint does not support an

---

[2] This amount reflects the price paid of $36,519.92 reduced by $6,912.72 for the statutory use offset, as identified by FCA; $2,500.00 for manufacturer's rebates; $3,811.00 for the optional service contracts; and $837.00 for the optional gap contract.

automatic right to a civil penalty such that it should be considered when determining the amount in controversy." (Doc. 9 at 3, emphasis omitted.)

Notably, this Court and others previously determined that when—as here—a plaintiff alleges the action was willful and the prayer for relief includes a request for civil penalties "as provided in Song-Beverly, in an amount not to exceed two times the amount of Plaintiff's actual damages," inclusion of the civil penalties in a calculation of the amount in controversy is appropriate. *See, e.g., Quinonez v. FCA US LLC*, 2020 WL 3397565, at *3 (E.D. Cal. June 19, 2020) (addressing identical language and including civil penalties in the calculation and observing "other courts, when analyzing a complaint with the exact wording incorporated in plaintiff's complaint here, have reached the same conclusion"); *Cortez Martinez v. Ford Motor Co.*, 2019 WL 1988398, at *7 (E.D. Cal. May 6, 2019) (where the plaintiffs alleged the defendant's failure to comply with the Song-Beverly Act was willful and the prayer for civil penalty "in the amount of two times Plaintiff's actual damages," the civil penalties were "expressly placed in controversy by the complaint"); *Modiano v. BMW of N. Am LLC.*, 2021 (S.D. Cal. Mar. 16, 2021) (including civil penalties in the amount in controversy calculation because the plaintiffs "allege[d] willfulness giving rise to penalties under the Song-Beverly Act"); *Elenes v. FCA US LLC*, 2016 WL 6745424, at *5 (C.D. Cal. 2016) ("By specifically seeking the maximum civil penalty [under the Song Beverly Act], plaintiffs placed that amount in controversy.").

Because Hernandez clearly plead FCA acted willfully in failing to comply with the Song-Beverly Act (Doc. 1 at 1-2 at 5-6, ¶¶ 23-24) and the prayer for relief seeks up to double the actual damages (*id.* at 9), this specific amount was placed into controversy. *See Quinonez*, 2020 WL 3397565, at *3; *Cortez Martinez*, 2019 WL 1988398, at *7. As discussed above, the amount of actual damages is $22,459.13; and twice that amount for civil penalties is $44,918.26. This amount shall be added to the calculation of the amount in controversy.

3. Attorneys' fees

The Ninth Circuit determined that future attorneys' fees awards may be included in determining the amount in controversy under fee-shifting statutes. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018); *see also Martinez*, 2019 WL 1988398, at *7 ("Attorneys' fees are available to Plaintiffs here under California Civil Code Section 1794(d)."). District courts may exclude

8

future fees if they are too speculative or if the defendant fails to show with a "reasonable probability that the amount in controversy exceeds the minimum." *Fritsch*, 899 F.3d at 795. "A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof." *Id.*

In the Notice of Removal, FCA suggested the Court consider $35,000.00 in attorneys' fees when calculating the amount in controversy. (Doc. 1 at 5, ¶¶ 18, 20.) FCA noted fees may be included in the amount in controversy calculation and asserted that attorneys' fees under the Song-Beverly Act "commonly exceed $35,000." (*Id.*, citing Gregg Decl. ¶¶ 11-13 [Doc. 1-1 at 2-3].) Specifically, Michael Gregg, counsel for FCA, asserted that in his "experience litigating such cases, claims for attorneys' fees through litigation commonly exceed $35,000.00." (Doc. 1-1 at 3, ¶ 12.)

Importantly, FCA did not meet its burden of proof to include the suggested attorneys' fees in the amount in controversy calculation. A single declaration stating a lump sum of future fees does not estimate future fees with a reasonable probability. *See Schneider*, 441 F. Supp. 3d at 914 (finding a declaration stating that "claims for attorneys' fees in these cases regularly approach or exceed $50,000" and that a recent fee demand by Plaintiff's counsel exceeded $300,000 was not competent proof to include fees in the calculation). The fee estimate lacks the evidentiary support that may allow for the inclusion of fees in the calculation, such as fee petitions submitted in similar cases. *See, e.g., Martinez*, 2019 WL 1988398 at *7 (including attorneys' fees in the amount in controversy where defendant submitted "five petitions for attorneys' fees filed in other similar cases by the same counsel who represent Plaintiffs here"). Further, FCA does not identify the amount of time tasks may take or the hourly billing rates, such that the Court may determine the fee estimate is not simply speculative. *See Conrad Assocs. v. Hartford Accident & Indemnity C*o., 994 F. Supp. 1196, 1200 (N.D. Cal. 1998) (finding that "[the] contention that attorney fees are likely to total at least $20,000 is too speculative" because the defendant failed to estimate "the amount of time each major task will take" or appliable hourly billing rates). Because the $35,000.00 appears purely speculative and lacks evidentiary support, the Court declines to include the amount identified in its calculation of the amount in controversy. *See Fritsch*, 899 F.3d at 795.

///

4. Total in amount controversy

Based upon the foregoing, the amount in controversy totals $67,377.39, which includes actual damages in the amount of $22,459.13 and civil penalties in the amount of $44,918.26. Accordingly, FCA failed to carry the burden to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Gaus* 980 F.2d at 566.

**IV. Conclusion and Order**

For the reasons set forth above, the Court finds it lacks diversity jurisdiction over the matter. Accordingly, the Court **ORDERS**:

1. Plaintiff's motion to remand (Doc. 6) is **GRANTED**;
2. The action **REMANDED** to the Superior Court of California, County of Stanislaus for lack of jurisdiction; and
3. The Clerk of Court is directed to close this action.

IT IS SO ORDERED.

Dated: **March 18, 2022**                         _____
                                                   UNITED STATES DISTRICT JUDGE